Good morning, Your Honors. My name is Sylvia Spars. I represent the Petitioner. In this case, may it please the Court, here the Petitioner is asking the Court to find that his departure is not legally sufficient to interrupt his 10 years of physical presence for cancellation of removal. Why? Because there is no evidence to show that he was properly informed of the consequences of signing a voluntary departure. Plus, the government never showed that he signed a voluntary departure form. Both under these facts, the BIA and this Court of Appeals has found that there's not a knowing and intelligent voluntary of – that there's a signing of a knowing and voluntary waiver, and therefore, that there can't be any presence, any breaking in his physical presence for cancellation of removal. Can I ask you? Yes. So what is the – what is it that the Petitioner has to be told to understand the consequences of voluntary departure? Well, he has to be advised of the – under a threat of deportation that if he takes voluntary departure, he's not going to be placed in removal proceedings. He never had that opportunity. They're relying on a State court case where he pleads guilty to a misdemeanor offense, and then in the minute order, somewhere down in the notes, it says that after he serves his 10 days in jail, he will then be processed for deportation. That is completely different than what happens in immigration proceedings. It's like basically apples and oranges. Yeah. I hear you on that. But so he was – but he knew – because tell me if I'm remembering this right. I think he said something to the effect that I want to fight this. I want to go before a judge. And the agents told him, well, you could do that, but then you'll remain in detention for a long time. I don't know. We might arrest your wife. Right. Well, he was coerced. They said if you choose voluntary departure, we're going to go after your family. We're going to go deport your wife, which is false. Okay. Hang on. So that's all I'm trying to figure out. So he did know, if what you're saying is that he needed to be advised that the consequence of taking voluntary departure is that you will basically forfeit your right to go before a judge, I think he did know that based on his own testimony. What he says is that, well, I was coerced, as you said, into giving up my right to go before the judge because they made these sort of subtle threats, right? Well, I kind of disagree that he knew because he wasn't – I mean, that information that's given – that's been given to him is false. So he's being told, you know, wrong information. You're going to remain in custody for several months. You're going to be shipped from jail to jail. That's wrong. He wasn't – he wasn't subject to mandatory detention. He would have been eligible for a bond. So this information was wrong. It's very similar to the Ibarra case that this circuit court held, where if you're – if the ICE officer is trying to dupe the alien into signing a voluntary departure form, that's not going to suffice. That's not annoying. It's not intelligent. The problem is that you're telling us about the cases of which we're fully aware of what sort of statement should be made to a person if they're before the immigration court. But this isn't that case. This case is a criminal case in Utah in which he was represented by counsel, and they were trying to arrive at some way that he would be able to lessen his time in jail. They entered into a plea bargain in open court. And a part of that plea bargain is you spend 10 days in jail. Unless you go across the border voluntarily, then there will be less time in jail. Now, that has nothing to do with immigration or immigration judges. It was a voluntary plea bargain. It seems to me that that distinguishes the cases that you've been citing to us. The lawyer was trying to get him as good a deal as he could so he wouldn't have to go to jail. He got them. He agreed to them. Why doesn't that distinguish from the cases that you've been citing? Well, first of all, it's not really clear that he agreed to these terms, because what is in the record is a minute order, and the minute order doesn't show that he signed a plea agreement. There's testimony as to whether his criminal defense attorney had advised him that this was part of the condition if he accepted to plead guilty to the misdemeanor offense. He also testified that the immigration court did not inform him. The minute order doesn't say anything about the plea agreement. You're trying to attack a State judgment which the record shows was completely valid on the basis of something that might have happened that we don't know about. That seems to me to be a big jump. Well, no.  Yes. He's represented by a lawyer. We're not attacking the conviction, Your Honor. We're attacking the fact that in the minute order there's an annotation that says that he will be in jail for 10 days or for whatever time it takes for immigration to remove him. That could have been being placed in removal proceedings and being issued an NTA. So this is different. It's part of the plea bargain. Where is the plea bargain? There's no plea bargain in the record. The lawyer could have asked for a plea bargain. The lawyer who represented your client could have asked for a plea bargain, could have asked for anything. There's a waiver that takes place by a person who actually has a lawyer looking out for his interests. How do we set that aside? Well, I agree that there could have been all these things, but that's speculation. The record that is before the Court today is only a minute order that doesn't show that there was a plea bargain that was signed and that he was informed. Somewhere along the line in this case, either during the criminal case or after in the immigration proceedings, someone concluded or found, and I think the BIA adopted this position, that the defendant, part of his bargain for a sentence was an agreement to be deported from the, you know, and I suppose that was taken from the minute order. The problem is, as you say, that agreement is not detailed. The problem I have is in accepting that characterization of the plea agreement, you know, I just don't believe that most, most, there's no showing that most state court judges who sit in criminal sentencings know anything about what they say. Okay, you know, you're going to be deported, you know. Do they know he could be eligible for cancellation, for withholding, for voluntary departure, you know, all these things, and they have no idea, you know, what process or the remedies or the procedures are that have to take place before a person is subject to removal, you know, including, you know, being removed subject to a prior order. So there's no showing that, one, the state court judge considered all these alternatives or for that matter even knew that they were available. So, to me, the basis for concluding that, well, it's clear from the record that this defendant agreed as part of his criminal sentence to be deported is, you know, there's a lack of showing as to what exactly went on. Yes, Your Honor, you're absolutely correct. The court had no idea and doesn't have the authorization to give him voluntary departure or give him all those advisals, so anything that happened in criminal court regarding that offense, and then if they want to bring in immigration proceedings into that criminal court's judgment is just legal error, so that shouldn't have any effect on this case. Well, I'm not sure they're talking immigration. The lawyer for the defendant says we will take my client will leave if that will do the deal. A person can waive all of these so-called rights that we give them, and there's nothing to indicate here that this person was not properly represented and nothing to indicate that anybody was thinking anything about immigration. They were thinking about settling a misdemeanor and getting up behind him. Your Honor, that would be based on speculation, because the record does show that when he was asked by the immigration court, by counsel, on cross-examination, he was asked, were you informed that this was part of the condition of your plea, of your accepting to agree to the misdemeanor offense? He said no. He was asked by, was he asked by, was he informed by his criminal defense attorney? He said no. He was asked if the immigration court, the immigration judge asked him, did the immigration court inform you of this was in your probation? The immigration court? The immigration judge asked him. Oh, okay. Were you aware, were you aware that you were pleading under, part of your probation was to depart the United States? He said no. So there's no evidence in the record that he was aware of all of this that was in the minutes. That's true, but we assume, unless it's shown otherwise, that the law is followed in the court by a judge. And it wouldn't show because it was never brought up. So what you're really asking us to do is set aside a judgment of a state court in Utah that appears to be valid and has never been taken on appeal on the basis of what might have happened. And I'm having difficulty with that. Your Honor, I'm not asking you to set aside the criminal court. We agree that he agreed to plead guilty to the offense, and that's it. But that's all he agreed to. How do you know that? We assume, unless otherwise, that the court follows the rules. They had a plea bargain. The plea bargain would have to be on the record. Or the attorney representing the defendant would say, I waive it. I mean, we don't even have that record before us to know what was said. But you have the record where he testifies that none of those things occurred. And if it's a misdemeanor offense, it's not a court of record, and maybe there wasn't anything on the record on a transcript or anything like that. Wait a minute. If it's a misdemeanor, it's what? If it was a misdemeanor offense, it might not have been a court of record where everything was transcribed. You want us to assume a lot of things. I don't want to. No, Your Honor, I don't want to assume anything. The only thing is that whatever happened in the criminal court cannot bind the petitioner in immigration proceedings in terms of not the conviction, but what supposedly was said that he agreed to for immigration purposes. It's a separate proceeding, an immigration proceeding, whether it be with ICE or with an immigration judge. He has certain rights, and he has certain advisals that he must be given and explained. And if he are given those, and those are properly given to him, and he signs off on them, then, yes, that voluntary departure will cut off his physical presence. But this was not the case here. And none of the cases from this circuit or the circuit cases or the Board of Immigration Appeals addresses cases in a criminal court. They specifically say in cases that are in immigration proceedings or other formal documented process where the alien has been deemed inadmissible, which obviously would take you out of the state court realm because state court judges have no authority to decide if an alien is admissible or not admissible. But that's true. But suppose the attorney representing your client says that my client will go voluntarily go across the border, and that's the part of the plea agreement. Where are you then? It was improper. It was improper for the lawyer to represent him to do that or improper for the court? Immigration rights. That's the problem. It doesn't cut off his immigration rights. The Board of Immigration Appeals or the Circuit Court of Appeals has never said has specifically indicated in immigration proceedings with USCIS, with an ICE officer. Are you saying you can't waive those? You can waive those in immigration proceedings, yes, absolutely, but not with state court. I'm going to reserve the rest of my time. But not with the state court. No, not with the state court. Even if it's a plea bargain with the lawyer there. It's impossible to give them up any place else. Your Honor, I don't see the authority of the state court to make determinations regarding his immigration proceedings and his rights. Oh, they have an opportunity to make a deal that he says he'll go across the border voluntarily. They could make that deal. We just don't know. Can I follow up on this? I have the same question. So let's say that in state court, the state judge had your client before him or her and said, listen, as I understand it, you've negotiated a plea agreement pursuant to which you're going to get less jail time from me. And part of the consideration you're going to give up is that you are going to take voluntary departure. You're not going to insist upon going before an IJ and the like. And the state judge proceeded to lay out all of the advisals that you think are necessary. I want to be sure, sir, that you understand that if you take voluntary departure, it will have this consequence. You'll be giving up this right and that. And your client signed off on that and said, yes, I agree. All that's worth it to me to get less jail time. I think that's what Judge Wallace is asking. If all of that happened, wouldn't we then be outside the realm of Ibarra? Because we would have had a state judge explaining on the record all of the consequences. No, because Ibarra, again, Ibarra and the Board of Immigration Appeals specifically talk about immigration proceedings. So even if, which this, our position is that this did not happen, but let's just say it happened. Yes. He would still have a right to talk to an ICE officer, and that ICE officer has duties. He has to explain to him what are his rights. He has to say, are you aware that if you take voluntary departure, then you don't have to be placed in removal proceedings. But I'm saying, hang on, hang on. He has to sign off on a voluntary departure form. But he can do any of those things. Can I just finish the question? It just doesn't help to talk over the person who's trying to have a conversation with you, that's all. I'm just saying that everything that you've just described that the ICE agent would tell the Petitioner, I'm just saying let's say the state judge had done that, and we have a record of it, and there's no dispute that that happened. Why would the ICE agent need to do it again? I don't understand. Because the case law doesn't support that finding. And the Board of Immigration Appeals, in matter of obvious, gave three specific exceptions for voluntary departure. They said if you have received an expedited removal order, if you have been offered and accepted a withdrawal of admission, or if you have been in a formal process documented where an alien is deemed inadmissible, then in one of those three instances, if you had one of these three, then if you signed off on voluntary departure, then, yes, that cuts off your physical residence. That didn't happen here. So they're specifically talking about immigration proceedings, not State courts. For that kind of, say, agreement outside of immigration court to be valid, it has to be binding on the immigration authorities also. In other words, suppose the agreement was, yes, I'll agree to voluntary departure, but the agency has to agree to allow me to return within 30 days. And the sentencing judge says it's fine. That's the sentence. All right? Well, it doesn't bind the immigration authority to allow him to return in 30 days, does it? Because the State judge has no authority to bind immigration. It would be just as if, in an immigration proceeding, the immigration judge said, okay, you know, I will allow you voluntary departure if you agree to plead guilty to petty theft and to a 30-day sentencing. And the alien says, I agree to that. Well, he's not going to go to jail because the immigration judge said that, because the immigration judge has no authority to impose a State criminal sentence, any more than the State court judge has the authority to make binding decisions with respect to immigration or removal. Isn't that the way it works? Yes, Judge. Thank you. We'll give you some time for a moment. Thank you. All right. Government counsel, boy, they got their money's worth with your plane ticket out here this time. Really? May it please the Court, Tracy McDonald for the respondent, Attorney General. The government would argue that the record of conviction surrounding the petitioner's February 2000 departure provides insight and background to his voluntary departure. Do you have a record site for whatever it is that we have that sets forth the terms of the plea agreement? The document that? Yeah, I just can't find it here. If you happen to have the record site, that would be helpful. 398 to 399. 398 to 399? Yes. Okay, thanks. So the record of conviction indicates that the petitioner was to serve 10 days or any lesser amount of time it would take for DHS to complete their paperwork and remove him. The record of conviction also listed as a condition of his probation that he not enter the United States without legal authorization. Therefore, the record of conviction indicates that the petitioner and his criminal attorney were aware of the impact of immigration consequences following the conviction and indicate that he accepted voluntary departure in lieu of removal. Okay. Let me stop you right there because that's why I wanted to have the record before me. So you're saying that we have something, I'm looking at 399 actually. Yes. Right? And you're saying that that document confirms that he was advised of all of the consequences of taking voluntary departure, including that it would cut off the continuous presence, and he nonetheless agreed to accept that? Yes. Okay. Where are you seeing that? Where it says that he will serve 10 days or such lesser time as it takes for, well, it says INS, so it was INS at the time, DHS, to complete their paperwork and deport. Right. Yeah, yeah. But that just means basically that the government is going to begin whatever proceedings are necessary to remove him, but that doesn't mean that he agreed to voluntary departure. It could have meant he's just going to allow INS to start the paperwork, and then he could say, okay, I want to go before an IJ. Okay. Well, then it goes further with his order of probation and states that one of the conditions of his probation is he's not to enter the United States without legal authorization, which indicates that he will be voluntary, he will be departed. Well, he'll be removed. That's my point. It doesn't mean that he is agreeing as a condition of this plea that he's entering that he's going to accept voluntary departure. I think it contemplates that he's going to be removed one way or the other. Right. But all he's saying is that, look, I expected that I'd be, have an opportunity to go before an IJ. Now, maybe I would ultimately be denied all relief and I would be removed, and in which case I have agreed that I'm not going to enter the United States without legal authorization, but that doesn't mean that I gave up the right to go before an IJ as part of this plea agreement. Well, the government would argue that just based on the notation that he was to serve 10 days or a lesser time, or the amount of time it took for DHS to prepare his paperwork, he's represented by counsel, and that clearly indicates that he's going to be, that he's going to be departing from the United States. But it doesn't specify the method. That's my point. It doesn't say, and furthermore, you have agreed to leave the United States by way of voluntary departure after having been advised of all the consequences of that. Again, he was represented by counsel. Is it, if you know, is it the regular practice of wherever it is, ICE or whatever agency of Homeland Security deals with these things, to accept the pronouncements of a state court, say like this, in a sentencing proceeding, as binding upon ICE? That I don't know. You don't know. So, but if it's in the government's favor, you accept it. Is that what you're saying? Although you don't know whether it's accepted in all cases? I mean, I'll ask the same question I asked your opponent. I mean, suppose the, you know, they had this negotiation in the sentencing and then the defense as well, but I'd also like to get voluntary departure. Can the state court judge as fine, you have voluntary departure? And that would be binding upon ICE? If the state court granted it. As a condition of probation, yes. That's what we have in this case. Was it voluntary departure? Did he grant voluntary departure? Yes. And so that's binding upon ICE? So ICE can't say no, you know, you're not eligible for voluntary departure because you don't meet the conditions and so on and so on with the statute? You're asking if ICE can't come in and say that he's not? Yes. When they get to, you know, time to remove the alien. Is that voluntary departure order, I'll call it, of the state court sentencing judge binding upon ICE? Yes, I would say that it is. In other words, ICE can't say no, you don't meet the conditions of voluntary departure. No, ICE can come in. ICE can't say. ICE is not bound by that agreement. Right, right. But the defendant is. Yes. Okay. I mean, I think my problem with your argument is that I just look at this little document here and that one notation about his having to agree to accept lesser time as it takes for INA. I just don't, that doesn't speak to voluntary departure anyway. I mean, Judge Tshishima's point is separate, of course. Right. He says it's not binding at all. I'm just stuck at, it doesn't even say that he agreed to accept voluntary departure. That term is never mentioned. No, it doesn't specifically state that. But it does notify him that he is expected to depart the United States and not return illegally. So I just feel like in that he's given notice that he will be departing the United States. Well, let me ask you a slightly different question that contemplates that you'll lose on this issue. Let's say that we were to decide against the government on this point and say that actually this case is squarely covered by Ebarra-Flores, right? What would the nature of the remand be? Is there still some argument the government has that he, even if this voluntary departure doesn't count to interrupt the 10-year continuous residence requirement, that is there some other basis on which you want to challenge the 10-year period? Or do we just send it back and say he's going to be deemed to have satisfied that element of the cancellation test, go on to the other elements? Do you know what I'm saying? Yeah. I think it would have to be remanded to decide the other elements of cancellation of removal. Okay. But the 10-year continuous, is it presence or residence? Presence. 10-year physical presence. Physical presence. Yeah. Sorry. I don't have the terms down. That element would be satisfied if we rule against the government on this point? Correct. Okay. Any further questions? Okay. The government would argue that the petitioner failed to demonstrate his requisite physical presence and, therefore, the petition for review should be denied. Okay. Thank you very much for your argument. Mr. Garrett, excuse me. Counsel, we have one more question. You haven't touched upon the alternative of the board. Moreover, even if he had timely filed asylum, et cetera, I take it that you still sustain the board in that alternative holding? Could you repeat that again? I'm sorry. I didn't hear the first part. Page 5 of the immigration judge opinion. I mean, of the board opinion. Uh-huh. And we're talking about? Moreover, even if? Second paragraph. First full paragraph. Yes. You're asking if I'm arguing that the board is correct in that? Are you still sustaining the board in that finding? Yes. That he failed to establish a nexus between a protected ground. His fear was based on criminal activity, and this court has held that that's not a basis to satisfy the nexus requirement. I'm just asking whether or not the government is still supporting that alternative holding of the board. Yes. Thank you. Thank you. Thanks very much. Counsel, let's give you two minutes for rebuttal. Just as the court had pointed out that the minute order that is in the record of proceedings is not sufficient to bind the petitioner to accept voluntary departure, and also as the other judge indicated that the final authority for this would be somebody in immigration proceedings, the immigration judge or an ICE officer and not a state court. Just to make the court should be clear on those issues. Let me ask you a question. Yes. Suppose the defendant just decided on his own to go across, go back to Mexico. There'd be no case here now, would there? Well, he's transferred from court to ICE custody. Just say he didn't go to jail. He didn't commit. He can go back across the border. Correct. And that would interfere with his time. No, it wouldn't interfere. If he voluntarily went back? No, unless he stood outside of the country for more than 90 days or a total of 180 days within that 10-year period, it wouldn't have cut his time. I don't understand what this alternative holding is then of the board. Alternative for withholding of removal, I'm sorry? They have an alternative holding in here, and I'm not sure I understand now what that's all about. I think it's just that he applied for multiple forms of relief, cancellation, asylum, and withholding. I think that goes to the asylum and withholding claims maybe. All we've talked about with you all is just the cancellation claim. We didn't even get to the other two forms of relief. Okay. I've got it. Thanks. In terms of the withholding, the Court had asked, again, which the Court has already heard about, the Barajas decision. And just to be clear on that, the Barajas decision plainly read the statute, made a statutory construction argument saying that after the Real ID Act, the statute clearly says for asylum claims we're going to hold the central reason, and for withholding only cases we're going to hold the A reason standard. And there was no distinction between mixed motive cases and single motive cases. And this is apparent in the subsequent cases, in Ayala v. Sessions and Sanja v. Sessions, where both cases cite two Barajas and say that for withholding we're going to use the A reason standard. So that's the proper standard that should have been used in this case. And, again, we would argue that we made the central reason anyways, because in this case where the grandmother, the aunt, and the uncle were all killed, there was documentary evidence, death certificates, newspaper articles, that his fear of future persecution would be based on his relationship, this kinship to this family, and they would go after him, single him out because of that reason. Okay. Thanks very much, counsel. We appreciate your helpful arguments today. The case just argued will stand submitted.
judges: Wallace, Tashima, Watford